HOLMES, Judge.
This is a termination of parental rights case.
Following an ore terms hearing, the Juvenile Court of Madison County ordered the termination of the parental rights of Judith McElroy Hutchens and Ricky Nathan Coble, Sr. in their children, Brandi Nicole Coble, age ten, and Ricky Nathan Coble, Jr., age nine.
Permanent legal custody of the children was vested in the Alabama Department of Pensions and Security (DPS). DPS was also given the authority to place the children for adoption.
The mother appeals. We affirm.
The dispositive issue on appeal is whether there was clear and convincing evidence to support the trial court’s decision to terminate the mother’s parental rights based on its conclusion that the children were dependent and that there were no less dras *157 tic alternatives which would best serve the children’s interests. In the Matter of Moore, 470 So.2d 1269 (Ala.Civ.App.1985).
When the trial court has heard the evidence, its judgment is given a presumption of correctness and will not be disturbed on appeal unless it is so unsupported by the evidence as to be plainly and palpably wrong. Johnson v. State of Alabama, 485 So.2d 1185 (Ala.Civ.App.1986). Applying this standard to the present case, we cannot say that the court’s judgment was plainly and palpably wrong. Put another way, there is clear and convincing evidence that supports the trial court’s order.
The record reveals, in pertinent part, that in November 1982 Brandi and Ricky Coble (and Kori and Rhonda Waters, who are not the subject of this proceeding) were removed from their mother’s custody. The family had been evicted from their home, and the mother, who was unable to provide for her children, had to place the children in two different households. The evidence also indicates that on previous occasions the mother, due to her inability to provide for them, had to leave the children with relatives and with DPS under boarding home agreements.
DPS filed a petition for temporary custody of the children. The petition was amended with allegations of sexual abuse of Ricky and his older sister, Kori Waters. The mother denies these allegations, but Audrey McElroy, the mother’s sister-in-law, testified at the termination hearing, which was held on March 21, 1986. Mrs. McElroy testified as to a conversation that she had with Ricky wherein he described the abusive act. Mrs. McElroy further testified to occasions when she witnessed the mother slapping, pushing, and kicking the children.
When temporary custody of the children was awarded to DPS in January 1983, the court’s order outlined what was expected of the mother before the children would be returned to her custody and care. The mother was required to find employment and adequate housing, keep regularly scheduled visits with the children, undergo psychological counseling, and cooperate with DPS.
Anne Knowles, a DPS caseworker, testified at the termination hearing as to the services which DPS has provided the mother in the last decade. She further testified that DPS has exhausted its efforts to rehabilitate the mother and that placement for adoption would be in the best interests of these children. She further stated that DPS has researched relative resources for placement of these children and none was suitable.
The mother also testified at the termination hearing. Her testimony revealed that she has not seen the children since November 1984. During that period of time, she revealed that she has only requested two visits with the children and she failed to show up at the scheduled time. She stated that she has written and called Brandi, but was not able to contact Ricky. There was also evidence that, during a thirteen-month period that the children resided with their paternal aunt and uncle, the Pritchetts, the mother visited them only three or four times.
The mother further testified that she went to psychological counseling for only six months before discontinuing the counseling. Additionally, she admitted that she did not always keep DPS advised of changes in her address.
The mother also testified that since November 1982 she has lived at approximately ten different places. The only housing which was not supplied by relatives or boyfriends during this period of time was the two-bedroom trailer that she rented in Nor vember 1985. The mother also testified that in the same period of time she has had eight to ten different jobs, many of which she had to give up because of her asthma.
We note that the mother has made some progress in the seven months immediately preceding the termination hearing. She *158 has rented a two-bedroom trailer and attends school for secretarial training. She has received government grants and other public assistance to pay for her education and living expenses. All of her current income is tied to the successful continuation of her course of study. She expects to graduate in February 1987, and she testified that at that time Vocational Rehab has a secretarial civil service job for her at Fort McClellan.
But even during this period of progress, the mother has not visited the children. Additionally, she has not offered to help support the children, even though she testified that she has some excess income from the assistance that she receives.
These children have not been in their mother’s custody since November 1982. They have been placed in numerous foster homes and facilities during this period of time. The mother has failed to visit regularly with her children, and, therefore, the children have had little or no stability in their lives in the past three and one-half years. Ms. Knowles, the caseworker, testified that the children were “devastated” when their mother failed to appear for the visit she had scheduled in December 1985. Ms. Knowles further testified that a permanent home would best serve the interests of these children and that the best option for that would be adoption.
In view of the above, there was clear and convincing evidence that termination of the mother’s parental rights was in the children’s best interests. In the Matter of Moore, 470 So.2d 1269.
The mother also contends that the trial court erred in admitting certain reports, which she contends were inadmissible hearsay. Without deciding this issue, suffice it to say that, upon reviewing the record, we find that there was other evidence upon which the court could base its decision. Therefore, the admission of these reports did not injuriously affect the substantial rights of the mother. Rule 45, Alabama Rules of Appellate Procedure.
This case is due to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J„ concur.