L. CHARLES WRIGHT, Retired Appellate Judge.
This is a termination of parental rights case.
In July 1988 the Juvenile Court of Lee County terminated the parental rights of Deardre Jones Menniefield, Randy Mennie-field, and Solomon Smitherman to Cornelius, Marie, Solomon Menniefield, and Samson Jones. The four minor children of the parties are the natural children of Mrs. Menniefield. Mr. Menniefield is the putative father of Cornelius, and Solomon Smitherman is the putative father of Marie, Solomon, and Samson. Mrs. Menniefield, Mr. Menniefield, and Smitherman, through court-appointed counsel, appeal from the judgments terminating their parental rights. The appeals have been consolidated.
I.
The primary argument asserted by all parties is that the evidence presented was not sufficient to sustain a judgment terminating their parental rights.
In order to terminate parental rights, the court must make two findings. First, based on clear and convincing evidence the court must determine that the child is dependent. Second, the court must find that there exists no viable alternative to termination of the custodial rights. Wallace v. Jefferson County Department of Pensions & Security, 501 So.2d 473 (Ala. Civ. App.1986). When determining whether to terminate parental rights, section 26-18-7(a), Code 1975, provides the following factors for the court’s consideration:
"(1) That the parents have abandoned the child, as herein defined;
“(2) Emotional illness, mental illness or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of such duration or nature as to render the parent unable to care for needs of the child;
“(3) That the parent has tortured, abused, cruelly beaten or otherwise maltreated the child, or attempted to torture, abuse, cruelly beat or otherwise maltreat the child, or the said child is in clear and present danger of being thus tortured, abused, cruelly beaten, or otherwise maltreated as evidenced by such treatment of a sibling;
“(4) Conviction of and imprisonment for a felony;
“(5) Unexplained serious physical injury to the child under such circumstances as would indicate that such injuries resulted from the intentional conduct or willful neglect of the parent;
*498 “(6) That reasonable efforts by the department of human resources or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed.”
When a child is not in his parent’s custody, as is the case here, section 26-18-7(b) provides the following additional factors for the court’s consideration: (1) the failure by the parents to maintain regular visits with the child, (2) the failure to maintain consistent contact or communication with the child, (3) the lack of efforts by the parents to adjust their circumstances to meet the needs of the child, and (4) failure by the parents to provide for the material needs of the child or to pay a reasonable portion of its support, where the parent is able to do so.
The trial court was presented the evidence ore tenus. Therefore, its decision is presumed to be correct and will be set aside only if the record reveals the decision to be plainly and palpably wrong. Wix v. Department of Pensions & Security, 464 So.2d 118 (Ala.Civ.App.1985).
A natural parent has the prima facie right to custody of a child. That right may be overcome by clear and convincing evidence that the removal from the parent’s custody is in the child’s best interests. Haag v. Cherokee County Department of Pensions & Security, 489 So.2d 586 (Ala.Civ.App.1986). In determining the child’s best interests, the court must consider whether a party to a custody proceeding is physically, financially, and mentally able to care for the child. Perry v. Department of Human Resources, 516 So.2d 659 (Ala.Civ.App.1987).
We have carefully reviewed the record in light of these presumptions and principles and find that there was clear and convincing evidence to support the court’s judgment terminating the parental rights of the parties.
The record reflects that the Department of Human Resources became involved with this familial situation in 1983, the year the Menniefields were married. Their involvement stemmed from a conviction of child abuse which Mrs. Menniefield sustained prior to her marriage while living in the state of Georgia. Once married, Mrs. Men-niefield moved to Alabama, at which time the Georgia authorities referred her case to the Lee County Department of Human Resources. At the time of her marriage, the State of Georgia had custody of her child. Mrs. Menniefield never regained custody of this child.
In early 1984 Mrs. Menniefield became pregnant with the child, Cornelius. During this period DHR received a report of suspected abuse of Mrs. Menniefield. During the investigation of the incident, Mrs. Men-niefield told the DHR employee that her husband had been drinking and had abused her by hitting her with his fists. She also stated that Mr. Menniefield had kicked her in the stomach while she was pregnant. That injury resulted in an overnight hospital stay.
When Cornelius was born, DHR sent an employee to perform homemaker services for the Menniefields. The homemaker testified that Mrs. Menniefield was not very concerned with the new infant. She testified that she tried without success to show Mrs. Menniefield the proper methods of feeding and care of the baby. Mrs. Men-niefield, however, did not bathe the infant and would let him sleep on the couch or on the bare springs of the baby bed. The homemaker described delusions expressed by Mrs. Menniefield that the infant had the ability to walk, talk, and eat solid foods. She told the homemaker that at the age Of four months Cornelius was eating candied yams, cornbread, and ice cream.
On one occasion the homemaker arrived at the Menniefield home and found Cornelius lying on the bed with burns covering his body. Mrs. Menniefield said that she accidentally burned the infant when she was trying to bathe him. Following that incident, Cornelius was placed in the custody of DHR. As a result of the injury, Cornelius had burns on over forty percent of his body and has permanent scarring and respiratory ailments. Following his hospitalization, he was placed with a special foster care family and has remained with them *499 for approximately three years. There was testimony that he has bonded well with his foster parents and that they are able to provide him with love and stability.
The day that Cornelius was injured was the last day that Mr. Menniefield saw his son. Thereafter, in March 1985, Mr. Men-niefield was arrested and pleaded guilty to theft of property in the second degree and burglary in the third degree. Since March of 1985 he has been in the custody of the Alabama Department of Corrections. He was paroled in 1986 but parole was revoked in 1987 due to a DUI conviction. Mr. Men-niefield was still incarcerated at the time of the proceedings.
The on-going relationship between Mrs. Menniefield and Solomon Smitherman began in January 1985. The relationship was not stable but rather tumultuous, with Mrs. Menniefield testifying that Smitherman would use drugs, get drunk, and abuse her. Their living arrangements were intermittent rather than continuous. Nevertheless, during their relationship Mrs. Menniefield gave birth to three children — Marie in February 1986, Solomon in December 1986, and Samson in November 1987. The last child was born while Mrs. Menniefield was in prison for theft of property in the second degree. Mrs. Menniefield testified that she told Smitherman that he was the father of the three children. She stated, however, that it was a possibility that someone else could be the father. The children were each placed in DHR’s custody shortly after their births.
Since the children’s births Smitherman has visited with the oldest child, Marie, on one occasion. He testified that prior to the hearing he was not aware of where the children were living, and that he had never attempted to find out. Smitherman acknowledges the children as his own. However, he has not taken any steps to declare himself to be their legal father. Smither-man testified that he had been convicted for burglary, theft of property, and DUI, and had served time in jail or prison for each of the offenses.
A psychologist, who performed a full psychological evaluation on Mrs. Mennie-field, testified that Mrs. Menniefield was unable to cope as a mother due to her limited insight, poor judgment, and lack of intellectual ability. She testified that it would be difficult for Mrs. Menniefield to make day-to-day decisions with respect to the welfare of her children. The psychologist concluded that Mrs. Menniefield could not change her circumstances to meet the needs of her children and that she was a potential danger to herself and to others.
The parties collectively argue that termination of their parental rights was premature because DHR failed to make reasonable efforts leading to the rehabilitation of the parents. In our review of the record we find that DHR made numerous attempts to work with the parents. It is sufficient to say that the evidence was abundant and clear that all efforts made by DHR to rehabilitate the parents were unsuccessful.
Mr. Menniefield contends that the court failed to exhaust all viable alternatives to termination of his rights. His argument is unpersuasive. At trial the court considered the home of Mr. Menniefield’s uncle as a viable relative resource for Cornelius. The facts revealed that the uncle had been twice convicted for drunk driving, that he was divorced with four children of his own, that he lived in a trailer with a male roommate, and that he had had no contact with Cornelius. Considering these facts the trial court could correctly conclude that the uncle was not a viable alternative to termination. The record is also clear that DHR sought less drastic alternatives but was unsuccessful.
We find that there was clear and convincing evidence that it was in the children’s best interests to terminate the parental rights of all the parties and that no less drastic alternative was reasonable or available.
II
Mr. Menniefield contends that it was error for the court to admit into evidence a set of records maintained by the police department on him, Mrs. Mennie- *500 field, and Smitherman. He insists that the records were hearsay, that they were not properly authenticated, and that they were not public records. We have reviewed the forty-four pages of the police report and find that the facts contained therein relate to the parties’ prior arrests and to an alleged child neglect charge against Mrs. Menniefield concerning the incident in which Cornelius was burned. Identical evidence was admitted at trial without objection. Even assuming that the report was inadmissible, we find that the report was merely cumulative and, in any event, harmless. In re Shivers, 440 So.2d 1081 (Ala. Civ.App.1983); Rule 45, A.R.A.P.
He next contends that the court erred in admitting into evidence records regarding Mrs. Menniefield’s health. His objection to the admittance is based on the fact that the records contained statements made by Mrs. Menniefield concerning the physical abuse perpetrated upon her by Mr. Menniefield. Mrs. Menniefield testified about the physical abuse inflicted upon her by Mr. Mennie-field. Without determining the admissibility of the records, we find that the evidence contained in the records was cumulative and therefore harmless. Sanders v. Guthrie, 437 So.2d 1313 (Ala.Civ.App.1983).
Mr. Menniefield’s final contention is that the court erred in admitting into evidence certain records of DHR. He asserts that the authors of the court reports, the letter, and the home evaluation were not present in court and available for cross-examination.
In our review we find that the three objectionable court reports had already been admitted by the court in previous hearings and had become a part of the permanent court file. The letter which he objects to on appeal was admitted into evidence without an objection. The issue concerning the letter is therefore not preserved for our review. The final objectionable report — the home evaluation from the Georgia authorities — had been admitted in a previous hearing and had become a part of the permanent court file.
Concerning evidence relative to disposi-tional hearings, section 12 — 15—65(f), Code 1975, provides in pertinent part the following:
“[A]ll relevant and material evidence helpful in determining the questions presented, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value, even though not competent in a hearing on the petition. The parties or their counsel shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making reports.”
The primary question is not the admissibility of the reports but whether Mr. Men-niefield was afforded the opportunity to examine the reports prior to the hearing. Mr. Menniefield did not object at trial or on appeal to lack of notice. The reports had already been filed with the court at previous hearings and from all indications it appears that the parties were afforded an opportunity to examine and controvert the evidence prior to trial. Mr. Menniefield had the opportunity to subpoena the authors of the reports to cross-examine them. He chose not to. Therefore, it was not error for the court to admit the reports. Landers v. Association for Guidance, Aid, Placement & Empathy, 472 So.2d 1055 (Ala.Civ.App.1985).
Furthermore, in-court testimony corroborated and in most instances duplicated the information contained in the reports. The reports were therefore cumulative and, in any event, harmless. Rule 45, A.R.A.P.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of section 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.