The Etowah County Department of Human Resources filed a petition to terminate the parental rights of J.V. (mother) to her son, D.V. After oral proceedings, the trial court ordered the termination of all parental rights. The mother appeals.
In order to terminate parental rights based on the state's petition, a court must make several findings. First, the court must determine that the child is dependent, based on clear and convincing evidence. Second, the court must find that there exists no viable alternative to termination of the parent's custodial rights. Ex parte Beasley, 564 So.2d 950 (Ala. 1990). The trial court was presented the evidence ore tenus; therefore, its judgment is presumed to be correct and will be set aside only if the record reveals the judgment to be plainly and palpably wrong. Varnadore v. State Dep't of HumanResources, 543 So.2d 1194 (Ala.Civ.App. 1989).
Although a child's parents have a prima facie right to custody, the paramount concern in these proceedings is the child's best interests. Mitchell v. State Dep't of HumanResources, 513 So.2d 647 (Ala.Civ.App. 1987). In determining the child's best interests, the court must examine whether the parents are physically, financially, and mentally able to provide for the child. Mitchell. If clear and convincing evidence reveals that the parents cannot, or are unwilling to, discharge these responsibilities, parental rights may be terminated. Mitchell; § 26-18-7, Code 1975.
The mother asserts that the trial court erred in terminating her parental rights. She insists that the department failed to present clear and convincing evidence to support its petition.
The record reflects that the department first obtained legal custody of the child in December 1990, following a finding that the child had been truant. The child was eight years old at the time. Upon investigation the department determined that the mother was addicted to prescription narcotic drugs.
In February 1991 the mother entered counseling with Dr. Cleve Estis. He recommended that she enter a drug treatment program. The department arranged for her to enter a program on an outpatient basis. She was very cooperative, and the child was subsequently placed back in her care in March 1991.
In May 1991 the department was informed that the mother had not been attending her outpatient program and that the child had been missing school. There was testimony that at this time the child was acting socially withdrawn and was not doing well academically. The child was removed from his mother's care and placed in foster care.
The mother began to show signs of improvement in June 1991. The child was again returned to her care. During that month the mother learned that the child had been sexually molested by his father. There was testimony that the child was traumatized and depressed during this period. The father subsequently pleaded guilty to the offense and was incarcerated at the time of the hearing.
In August 1991, while still in the custody of his mother, the child had a bicycle accident and suffered a concussion. He was hospitalized for several days. His mother reported that he had amnesia. Personnel at the hospital *Page 1236 
contacted the department with several concerns. They stated that the child appeared very tense and fidgety around his mother and that he did not have amnesia. Neighbors and other collateral sources reported to the department that the mother was continuously encouraging the child to act as if he did not remember people or what had happened to him in the past. Later, she took him to the emergency room on several occasions, requesting he be given suppositories. The child's doctor was concerned that the mother was addicted to the suppositories herself and used the child as an excuse to obtain them.
The mother allegedly told the child that the doctor said he had brain damage and that he was going to die. She told school officials that he was only supposed to stay in school half a day. The department contacted the child's neurologist and learned that he had not restricted the child's school activities. In August 1991, the child was removed from his mother's custody and placed in foster care, where he has continuously remained.
The department and her counselor continued to work with the mother. Both recommended that she receive drug rehabilitation. The mother, however, denied that she had a drug problem. She continuously indicated that she only took medicine that was prescribed for her. The evidence indicated that she took approximately 350 tablets of Diazepam and/or Doxipen between May and July 1993, only two months before these proceedings began. The mother began attending a drug treatment program the month after the petition was filed. She testified, however, that she did not have a drug problem.
At the time of the hearing the mother was 41 years old. She had no income and had not worked in 12 years. She lived with her mother in an apartment. She testified that she had heart problems, problems with her nerves, and recurring pain in her leg from an injury sustained in 1990, for which she took pain medication. She confirmed that she was found guilty of shoplifting in 1991. She attempted suicide in 1992.
At the time of the hearing the child was 11 years old. He had been in the department's legal custody since December 1990. While in the department's custody, the mother visited with the child once a month. There was testimony that following the visits, the child would regress. He would begin to make twitching motions and to walk and talk like a baby.
A department employee testified that at the time of the hearing, the child was doing well in school. Although his grades ranged from A's to D's, there were more good grades than bad grades. He had no unexcused absences. The employee testified that the child was a typical eleven-year-old boy and that the department did not anticipate any difficulty placing him for adoption.
The record reflects that the department attempted to locate relative resources for placement. The relatives, however, were not found to be suitable for long-term placement.
We find the court's decision to be supported by clear and convincing evidence. The only less drastic alternative available was to maintain the child in foster care until, perhaps, the mother could rehabilitate herself sufficiently to become a fit mother. The child is now 13 years of age and presently adoptable, according to the department. He has been in foster care for nearly five years. He has expressed to the department and professional counselors his desire to have his future made as certain as possible. Further foster care is not desirable. The mother has shown that she does not intend to relinquish her addiction to drugs. The father has been convicted of sexual abuse of his son. This court recognizes the primary parental rights of parents to custody of their child. However, the rights of the child are paramount when it is clearly and convincingly shown that his best interests are no longer served by the custody of the parent.
The life of this child has been in limbo for five years. He has parents, but no parental concern or care. He now cries out to be given an opportunity to be free from primary concern for the rights of a parent who cares so little for him that she will not correct her life for his sake. He asks that his life be the primary concern. The legislature of this state has provided the court with the power to grant him his desire. The trial court has exercised that power after much consideration. This court will not alter the judgment of that court. *Page 1237 
The mother next asserts that the trial court erred in admitting certain medical records, mental health records, pharmacy records, and counselor's reports into evidence.
We presume that the trial court considered this evidence for purposes of deciding the disposition of the child because he had previously been found to be dependent. T.W.W. v. LauderdaleCounty Dep't of Human Resources, 628 So.2d 761 (Ala.Civ.App. 1993); Gentry v. State Dep't of Pensions Security,462 So.2d 929 (Ala.Civ.App. 1984). Under such circumstances, § 12-15-65(g), Code 1975, is controlling. That section provides:
 "(g) In disposition hearings all relevant and material evidence helpful in determining the questions presented, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value, even though not competent in a hearing on the petition. The parties or their counsel shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making reports."
On appeal the mother does not assert that she was refused the opportunity to examine and to controvert the written reports. Her assertion is that the admittance was in violation of the hearsay rule. Application of § 12-15-65(g) renders her assertion groundless. Furthermore, in-court testimony corroborated and in most instances duplicated the information contained in the reports. The reports were therefore cumulative and, in any event, harmless. Rule 45, Ala.R.App.P.
The judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
All the Judges concur.