The Shelby County Department of Human Resources (DHR) petitioned the juvenile court, seeking permanent custody of B.W. and T.L., who are half-sisters, sharing the same biological mother. The court had previously found the children to be dependent, and they were in the temporary custody of DHR. Following oral proceedings, the court terminated the parental rights of J.L., the father, and W.L., the mother, as to T.L. The court also terminated the mother's parental rights as to B.W; B.W.'s father was deceased at the time of the proceedings. J.L. and W.L. appeal.
In order to terminate parental rights upon the state's petition, a court must make several findings: First, the court must determine that the child is dependent, according to clear and convincing evidence. Second, the court must find that there exists no viable alternative to termination of the parent's custodial rights. L.A.G. v. State Dep't of Human Resources,681 So.2d 596 (Ala.Civ.App. 1996). If the trial court was presented ore tenus evidence, its judgment is presumed to be correct. It will be set aside only if the record reveals it to be plainly and palpably wrong. Id.
Although a child's parents have a prima facie right to custody, the paramount concern in these proceedings is the child's best interests. Id. In determining the child's best interests, the court must examine whether the parents are physically, financially, and mentally able to provide for the child. Id. If clear and convincing evidence reveals that the parents cannot, or are unwilling to, discharge these responsibilities, parental rights may be terminated. Id.; §26-18-7, Ala. Code 1975.
The mother and father assert that there was a lack of clear and convincing evidence to support the trial court's judgment.
In October 1993, DHR received reports from the children's respective schools, alleging that the children had been unsupervised, neglected, and abused. DHR began an investigation at that time. For two months, DHR worked with the family in an effort to address the family's needs and to secure adequate housing. In December 1993, DHR received a report that B.W. had been physically abused by J.L.; B.W. and T.L. were immediately taken into the custody of DHR.
Following the initial hearing, the parents were ordered to submit to a psychological evaluation. The psychological evaluation revealed that the mother was mildly mentally retarded. The psychologist reported:
 "It would be suspected that [the mother] frequently encounters difficulties with interpersonal relationships. Much of her behavior is rather immature and childlike with little evidence of being able to assume a normal adult responsibility. While there was no indication of violence in her behavior or responses during this session, there were indications of her possibly becoming frustrated very easily and feeling that she had to do something even though she did not know what to do."
The psychological evaluation of the father revealed that he was mentally limited, with an I.Q. of 56. The psychologist noted that the father had gained very little general information and knowledge in his life. The test results indicated that he was emotionally immature and that he probably found himself feeling helpless on many occasions. There was a possibility of organic brain damage, caused from seizures and his use of alcohol. The psychologist concluded that it would not be surprising if, from time-to-time, the father *Page 870 
lashed out at objects or at people when he became confused about what he should do.
At the time of the hearing, the mother was 45 years old, with a ninth-grade education. She had given birth to 5 additional children, whose ages ranged from 18 years to 29 years. She testified that she did not know where any of these children lived and that she did not have contact with them. The father was 50 years old, with a fifth-grade education. He was unemployed and had received Social Security benefits for approximately five years.
The family moved to Alabama from California in early 1993. DHR requested, and ultimately received, criminal records from California involving the mother. The records indicated that one of the mother's children had died in 1974. The mother was arrested and charged with murder, and the other children were removed from her custody. The murder charge was subsequently dismissed; the mother was convicted of child endangerment and was placed on 12 months' probation. In 1978, she was convicted of prostitution and theft of property. A 1980 conviction for prostitution was subsequently dismissed. She confirmed that she was convicted of forgery in 1992. In September 1994, the mother was arrested for DUI and the father was arrested for public intoxication. The parents were fined. The mother was ordered to attend DUI school. In November 1994, the parents were in court on a charge of receiving stolen property; the charge against the mother was dismissed, and the father was ordered to pay' a fine.
The parents were ordered to attend substance abuse counseling and regular counseling sessions. A March 1995 report to the court revealed that the parents were not attending the counseling sessions regularly.
A June 1995 report revealed that the parents had attended two counseling sessions in March and had canceled two sessions in April. The counselor reported that the parents appeared to have little insight into the relationship between their actions and the external consequences. The substance abuse counselor reported that the parents' attendance rate for alcohol abuse counseling was on the lower end of the average range. The parents continued to deny that they had an alcohol problem.
In May 1995, the parents were informed that DHR would be seeking permanent custody of the children. In June 1995, DHR learned that the parents had moved to another town and that they were staying with friends and relatives. The parents were unable to provide an address or telephone number where they could be contacted. DHR continued to have sporadic communication with the parents from June 1995 until the final hearing.
Eleven-year-old B.W. testified at the hearing that she did not want to be returned to her mother and stepfather; that she wanted to be adopted; that she was afraid of being left alone again, of not being taken care of, and of not having enough food to eat; and that she did not want to be hurt by her stepfather again.
The record established that relative resources were investigated and that none was found to be willing and able to provide care for children.
We find the court's decision to be supported by clear and convincing evidence. The only less drastic alternative available was to maintain the children in foster care until the mother and father could rehabilitate themselves sufficiently to become fit parents. In view of their actions in the last few years, that possibility is remote. B.W. is now 13 years old and T.L. is six years old. They are presently adoptable. We find the court's decision to be in the best interests of the children.
The parents next assert that the court erred in considering certain reports and records previously presented to the court.
We deduce from the voluminous proceedings that the trial court considered this evidence for purposes of deciding the disposition of the children, because they had previously been found to be dependent. J.V. v. State Dep't of Human Resources,656 So.2d 1234 (Ala.Civ.App. 1995). Section 12-15-65(h), Ala. Code 1975, is controlling *Page 871 
under such circumstances. That section provides:
 "(h) In disposition hearings all relevant and material evidence helpful in determining the questions presented, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value, even though not competent in a hearing on the petition. The parties or their counsel shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making reports."
The parents do not assert that they were refused the opportunity to examine and controvert the reports previously admitted. They insist that the court's consideration of the reports was in violation of the hearsay and relevancy rules. The application of § 12-15-65(h) makes their argument groundless. Further, much of the information presented in the previous reports was corroborated by in-court testimony. The reports and records were, therefore, cumulative, and as such, harmless. J.V., supra.
AFFIRMED.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.