WRIGHT, Retired Appellate Judge.
The Walker County Department of Human Resources filed a petition to terminate the parental rights of E.J.W. (mother) and T.R.J. (father) to their son. After oral proceedings, the trial court ordered the termination of the mother’s parental rights and a home study of the father. The mother appeals.
In order to terminate parental rights based on the state’s petition, a court must make several findings. First, the court must determine that the child is dependent, based on clear and convincing evidence. Second, the court must find that there exists no viable alternative to termination of the parent’s custodial rights. Ex parte Beasley, 564 So.2d 950 (Ala.1990). The trial court was presented the evidence ore tenus; therefore, its judgment is presumed to be correct and will be set aside only if the record reveals the judgment to be plainly and palpably wrong. Varnadore v. State Dep’t of Human Resources, 543 So.2d 1194 (Ala.Civ.App.1989).
Although a child’s parents have a prima facie right to custody, the paramount concern in these proceedings is the child’s best interests. J.V. v. State Dep’t of Human Resources, 656 So.2d 1234 (Ala.Civ.App.1995). In determining the child’s best interests, the court must examine whether the parents are physically, financially, and mentally able to provide for the child. Id. If clear and convincing evidence reveals that the parents cannot, or are unwilling to, discharge these responsibilities^ parental rights may be terminated. J.V.; § 26-18-7, Ala. Code 1975.
The mother asserts that the trial court erred in terminating her parental rights. She insists that the department failed to exhaust efforts to rehabilitate her before moving to terminate her parental rights.
Whether the department’s reasonable efforts to rehabilitate the mother failed is one factor which the trial court must consider when determining whether to terminate one’s parental rights. § 26-18-7(a)(6), Ala. Code 1975; Ezekiel v. State Dep’t of Human Resources, 562 So.2d 524 (Ala.Civ.App.1990).
The record reflects that the department first obtained legal custody of the child in August 1992, following a finding that the child was dependent. The child was approxi *59 mately two months old, was in the hospital, and was addicted to cocaine at the time. Upon investigation, the department determined that the mother was addicted to drugs, was homeless, and had not contacted the hospital regarding the welfare of the child.
The mother contacted the department one time between 1992 and February 1994. She stated that she was unable to care for the child, that she abused drugs, and that she had no desire to enter a treatment program. In 1995 the maternal grandmother advised the department that she wanted to provide a home for the child; however, the grandmother had no further contact with the department. In 1996 the mother contacted the department and stated that her aunt was willing to accept legal custody of the child. The department contacted the maternal aunt, who stated that her involvement with the child depended upon the mother’s involvement with the child. Neither the mother nor the maternal aunt appeared for an arranged visit with the child. The mother had no further contact with the child.
The mother testified that she did not visit with the child because the child had problems adjusting to her visits and that she did not get along with the foster parents. She also testified that she was drug free; however, she refused to take a drug test. The mother was unemployed and without income. She had given birth to another child, who was in her care.
A department worker testified that in 1996, she had offered drug treatment to the mother as a way of regaining custody of the child and that the mother had refused treatment. She also stated that the mother did not visit the child and that the mother did not pay any support for the child. The record further reveals that the department had offered employment assistance, housing arrangements, and parenting classes to the mother, which she refused.
Based upon our review of the record, we conclude that the department offered the mother rehabilitative services, that the mother consistently refused, and that the department’s reasonable efforts to rehabilitate the mother failed.
The mother also insists that there was a viable alternative to the termination of her parental rights. She specifically argues that her aunt was a viable alternative.
The record reflects that the maternal aunt told department workers that her involvement with the child depended upon the mother’s participation and involvement with the child. The department conducted a home study of the maternal aunt, which was favorable. The department arranged for the maternal aunt and the mother to have a weekend visitation with the child; however, neither the maternal aunt nor the mother arrived to pick up the child for the scheduled visit. When the maternal aunt was last contacted about the child, she did not express any interest in the child’s custody, but stated that the mother might be interested in custody of the child. The trial court found that there did not “appear to be any maternal relatives of this child willing or able or interested in providing the care, custody, and control required by the child.”
After carefully reviewing the record, we conclude that the trial court did not abuse its discretion in determining that the maternal aunt was not a viable alternative to termination.
The judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
All the judges concur.