On Application for Rehearing
The opinion of this court issued on November 22, 2002, is withdrawn, and the following is substituted therefor.
Y.M. ("the mother") appeals from a judgment terminating her parental rights to three of her children: two girls, A.R.H., age 5, and J.K.H., age 3 1/2; and a boy, D.M., age 21 months. On appeal, Y.M. raises four issues: whether the evidence was insufficient to support the termination of her parental rights; whether the trial court erroneously admitted hearsay evidence; whether the termination of her parental rights wrongly punished her for being a victim of domestic violence; and whether, as an alternative to termination of her parental rights, there were available relative resources that the Department of Human Resources ("DHR") did not consider. Because the hearsay issue is dispositive of this appeal, we will not discuss the remaining issues.
Section 26-18-7, Ala. Code 1975, sets out the statutory bases for terminating parental rights. That section provides:
 "(a) If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child, the court shall consider, and in cases of voluntary relinquishment of parental rights may consider, but not be limited to, the following:
 "(1) That the parents have abandoned the child, provided that in such cases, proof shall not be required of reasonable efforts to prevent removal or reunite the child with the parents.
 "(2) Emotional illness, mental illness or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of such duration or nature as to render the parent unable to care for needs of the child.
 "(3) That the parent has tortured, abused, cruelly beaten, or otherwise maltreated the child, or attempted to torture, abuse, cruelly beat, or otherwise maltreat the child, or the child is in clear and present danger of being thus tortured, abused, cruelly beaten, or otherwise maltreated as evidenced by such treatment of a sibling.
"(4) Conviction of and imprisonment for a felony.
 "(5) Unexplained serious physical injury to the child under such circumstances as would indicate that such injuries resulted from the intentional conduct or willful neglect of the parent.
 "(6) That reasonable efforts by [DHR] or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed.
 "(7) That the parent has been convicted by a court of competent jurisdiction of any of the following:
 "a. Murder or voluntary manslaughter of another child of that parent.
 "b. Aiding, abetting, attempting, conspiring, or soliciting to commit murder or voluntary manslaughter of another child of that parent. *Page 105 
 "c. A felony assault or abuse which results in serious bodily injury to the surviving child or another child of that parent. The term `serious bodily injury' means bodily injury which involves substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.
 "(8) That parental rights to a sibling of the child have been involuntarily terminated.
 "(b) Where a child is not in the physical custody of its parent or parents appointed by the court, the court, in addition to the foregoing, shall also consider, but is not limited to the following:
 "(1) Failure by the parents to provide for the material needs of the child or to pay a reasonable portion of its support, where the parent is able to do so.
 "(2) Failure by the parents to maintain regular visits with the child in accordance with a plan devised by the department, or any public or licensed private child care agency, and agreed to by the parent.
 "(3) Failure by the parents to maintain consistent contact or communication with the child.
 "(4) Lack of effort by the parent to adjust his or her circumstances to meet the needs of the child in accordance with agreements reached, including agreements reached with local departments of human resources or licensed child-placing agencies, in an administrative review or a judicial review.
 "(c) In any case where the parents have abandoned a child and such abandonment continues for a period of four months next preceding the filing of the petition, such facts shall constitute a rebuttable presumption that the parents are unable or unwilling to act as parents. Nothing in this subsection is intended to prevent the filing of a petition in an abandonment case prior to the end of the four-month period."
(Emphasis added.)
The children were removed from the mother in May 1999. The petitions for termination of parental rights alleged that the mother had been repeatedly abused by her husband R.H.; that she had taken refuge in various domestic-violence shelters, but that she had repeatedly returned to her abusive husband; that she had failed to protect herself and the children from the husband's abuse; and that she had failed to comply with prior court orders requiring her to attend domestic-violence classes, to maintain stable housing and employment, and to notify DHR of any change of address or telephone number. The petitions further alleged that the mother was not at present, and would not be in the foreseeable future, able or willing to provide a fit and suitable home for the children or to provide for their future support, training, maintenance, and education. The petitions alleged that all reasonable efforts by DHR to rehabilitate the mother had failed and that there were no alternatives to terminating the mother's parental rights. The petitions did not allege that the mother had abandoned the children, see § 26-18-7(a)(1), Ala. Code 1975, that the mother had failed to maintain regular visits with the children, see § 26-18-7(b)(2), Ala. Code 1975, or that the mother had failed to maintain consistent contact or communication with the children, see § 26-18-7(b)(3), Ala. Code 1975.
At trial, DHR presented no evidence in its case-in-chief to support any ground for termination other than the mother's failure to visit the children and the mother's failure *Page 106 
to maintain consistent contact and communication with the children. DHR presented evidence that the mother was married to R.H. in 1999. It presented evidence tending to show that, for a three-and-one-half-month period between October 7, 1999, and January 21, 2000, and for a seven-month period between July 17, 2001, and February 13, 2002, the mother did not visit with or contact the children.[1] DHR also presented evidence indicating that it had attempted to locate relatives who were willing to take the children but that it had been unsuccessful.
At the beginning of the parental-rights-termination proceedings on February 28, 2002, counsel for DHR requested, over the mother's objection, that the juvenile court "take judicial knowledge of the . . . complete contents of each court file." The court file contained four court reports[2] submitted by DHR caseworkers, as well as psychological evaluations by mental health professionals, and reports from family-violence shelter personnel. The court reports contained summaries of conversations between DHR caseworkers and the following individuals: the mother's husband, who is the children's legal father; the children's foster mother; family-violence shelter personnel; hospital social workers; the director of a YWCA parenting class the mother had attended; the mother's employers; and the mother's landlords. None of those individuals testified at trial. The trial court agreed to take judicial notice of the contents of the files.
DHR called only one witness — Catherine Denard, who had been the supervising caseworker for the family since November 2000. Ms. Denard testified that her knowledge of the case before that time came from reading the court reports prepared by other DHR social workers and from talking to the three previous caseworkers — Christy Bethune, Gwen Reasor, and Tyshelle Wilson. DHR presented no direct testimony regarding domestic violence between the mother and R.H. On cross-examination by counsel for the mother, Denard stated that she was "aware of several incidents of domestic violence" between R.H. and the mother. She also stated that DHR had "placed [the mother] in several shelters that she left. . . ." She acknowledged that the children's foster parents wanted to adopt them.
When DHR sought to introduce, through Denard, a visitation report showing the times the mother had visited with the children, a report based in part on Denard's conversations with previous caseworkers, counsel for the mother objected on hearsay grounds. Counsel for DHR argued that the evidence was admissible, stating, "This is a dispositional hearing." The juvenile court sustained the objection, stating that the visitation report was cumulative *Page 107 
of other admissible evidence. The court explained that the information in the visitation report was contained in the court reports and, the court stated, the court reports had been previously admitted without objection at another proceeding.
Later, when DHR attempted to introduce a July 11, 2001, court report and the mother's counsel again objected on hearsay grounds, the juvenile court sustained the objection, stating:
 "It's already part of the Court file. It's duplicative of what the Court's already considering. There's no reason to admit it again. . . . [A]ll court reports and files, notations, memoranda, anything in these three files is part of the court record to be reviewed in order to determine whether termination should take place. Documents, all attachments, all court reports, all psychiatric evaluations, all testings, anything that has been submitted will be reviewed by the Court as part of the termination file."
(Emphasis added.) After a lunch recess, the following occurred:
 "[THE COURT] [T]he Court wants to clarify something for all the parties. . . . We are just making sure everyone's clear that the cases began in 1999, that anything and everything in the files is being considered and reviewed as part of the termination trial, which would include all court reports; it would include all psychological evaluations, all reports from the treating professionals, anything and everything that's included in the confines of all three files [is] being considered by the Court, by this Court prior to issuing an order on whether the termination should or shouldn't take place
regardless of whether a particular party admits it as an exhibit to this termination trial or not. This Court will review every document and every word in all three files in order to make that determination if by some chance a party, either DHR or the attorney for the mother or the Guardian Ad Litem appeals this matter to the Court of Appeals, to the Supreme Court or any other court of competent jurisdiction. In order for that Court to properly review the decision of this Court, it will be incumbent upon that Court to make the same review of the entire contents of everything in these files, every word, in order for them to evaluate the basis behind whatever decision I may enter. Does that help clarify the issue to all the parties here?
"[COUNSEL FOR DHR]: Yes, sir. Thank you.
 "[COUNSEL FOR THE MOTHER]: It does, Judge. And I certainly wouldn't mean to quarrel with the Court, but I previously had objected to the dimension [sic] of all that information and wish to, at least, restate my objection so that it will not be waived at some point in the future.
 "Understandably, a dispositional hearing has a different standard of evidence than a . . . termination. In my opinion, the termination of parental rights trial is not a dispositional hearing. . . .
 "[THE COURT]: And I overruled your objection, and I also stated to you at that point in any dispositional hearing every attorney and party has an opportunity to question the maker of the court reports in order to get to the truth of any statement that's been made in that court report. Every attorney has an opportunity to question any provider of treatment in order to determine the validity of any comments or statements made by that treatment provider, and in this case there have been no challenges or question made to either the DHR social worker or the maker of the court *Page 108 
reports or any treating professional. And, therefore, the Court takes into consideration all those documents, and it's my understanding that that is in line with what the caselaw says I can do in the State of Alabama. If there's caselaw to the contrary, then this Court will make decisions based on what the caselaw says and what the statute says; and therefore my ruling stands."
(Emphasis added.) When the juvenile court's explanatory statements are read as a whole, it is apparent that the court concluded that, because no objections to the court reports and other documentary materials had been interposed at the time they were originally offered (presumably at one of the early dispositional hearings), the documents were admitted for all purposes and for all subsequent proceedings, including the parental-rights-termination proceeding, and, because they were a part of the case files, they were properly the subject of judicial notice.
The mother argues that the DHR court reports and other materials contained in the case files were inadmissible hearsay. She acknowledges that hearsay is admissible at a "disposition hearing," but, she contends, a parental-rights-termination proceeding is not a "disposition hearing."
Section 26-18-4, Ala. Code 1975, states that "[u]nless otherwise provided herein, proceedings to terminate parental rights shall be governed by Title 12, Chapter 15, Article 3 and by the Alabama Rules of Juvenile Procedure." Rule 25, Ala. R. Juv. P., contemplates multiple "phases" of a juvenile proceeding. Subpart (A) of Rule 25 sets out the procedure for an "adjudication" in juvenile court; subparts (B), (C), and (D) set out the procedure for a "disposition" in juvenile court. Subpart (A) states:
 "(A) At any hearing other than to transfer to another court, the court may handle all matters at one time or in phases.
 "If the allegations of the petition are denied, the court shall direct that testimony of witnesses be taken. The conduct of the hearing shall be consistent with legal and due process requirements and shall proceed generally in a manner similar to the trial of a civil action before the court sitting without a jury. . . ."
The Comment to Rule 25 states that the "[p]hases referred to in (A) above contemplates, e.g., an advisory phase, a detention phase if necessary, an adjudicatory phase, a dispositionalphase, or in any combination of phases." (Emphasis added.) The United States Supreme Court has also observed that a parental-rights-termination case is composed of two phases or stages. See Santosky v. Kramer, 455 U.S. 745, 760,102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (stating that "[a]fter the State has established parental unfitness at [the initial factfinding] proceeding, the court may assume at the dispositional stage that the interests of the child and the natural parents do diverge") (emphasis added).
Section 12-15-65, Ala. Code 1975, which provides in more detail the procedure for the conduct of hearings and the disposition of cases in juvenile courts, implicitly recognizes the two-phase nature of a parental-rights-termination proceeding. Subsection (h) of § 12-15-65 allows some evidence to be received at a "disposition hearing" that is "not competent in a hearing on the petition." That subsection states:
 "In disposition hearings all relevant and material evidence helpful in determining the questions presented, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value, even though not competent in a hearing on the petition. The parties or their counsel shall be afforded an opportunity to *Page 109 
examine and controvert written reports so received and to cross-examine individuals making reports."
(Emphasis added.) Section 12-15-65(f), Ala. Code 1975, states the evidentiary standard that applies at the adjudicatory phase of a proceeding to terminate parental rights. Subsection (f) provides:
 "If the court finds . . . from clear and convincing evidence, competent, relevant, and material in nature, that parental rights should be terminated, the court may proceed immediately, in the absence of objection showing good cause or at a postponed hearing, to make proper disposition of the case."
Section 12-15-65(f) establishes three evidentiary and procedural norms. First, it mandates that the decision to terminate parental rights be based on clear and convincing evidence. Second, it mandates that only "competent, relevant, and material" evidence can satisfy the clear-and-convincing quantum of proof. Hearsay is not competent evidence. Worley v. Jinks, 361 So.2d 1082, 1089
(Ala.Civ.App. 1978). Third, it establishes as a logical precondition to the disposition the juvenile court's finding that parental rights should be terminated. In other words, § 12-15-65(f) assumes that a hearing on whether to terminate parental rights is not a disposition but is, instead, an adjudication — the antecedent to a disposition.
The conclusion that a decision to terminate parental rights is not a disposition but an adjudication is bolstered by an analysis of § 12-15-71(a), which is entitled, in part, "Disposition of dependent children." That statute lists five possible dispositions that may be ordered to protect the welfare of a dependent child. After a finding of dependency, the juvenile court may:
 "(1) Permit the child to remain with the parents, guardian, or other custodian of the child, subject to conditions and limitations as the court may prescribe;
 "(2) Place the child under protective supervision as herein provided or under the supervision of [DHR].
"(3) Transfer legal custody to any of the following:
 "a. [DHR]; provided that the department is equipped to care for the child.
 "b. A local public child-placing agency or private organization or facility willing and able to assume the education, care, and maintenance of the child and which is licensed by [DHR] or otherwise authorized by law to receive and provide care for the child.
 "c. A relative or other individual who, after study by [DHR], is found by the court to be qualified to receive and care for the child.
 "(4) Make any other order as the court in its discretion shall deem to be for the welfare and best interests of the child.
 "(5) In appropriate cases, award permanent custody to [DHR] or to a licensed child-placing agency with termination of parental rights and authorization to place for adoption, without appointing a legal guardian or guardian of the person, or award temporary custody to the same without appointing a legal custodian or guardian or guardian of the person."
(Emphasis added.) The wording of the fifth dispositional option is significant. Section 12-15-71(a)(5) states that a juvenile court may "award permanent custody to [DHR] . . . with termination of parental rights." It does not state that a juvenile court "may terminate parental rights." The wording of subsection (5) clearly demonstrates that awarding custody to DHR — *Page 110 
not terminating the rights of a parent — is the dispositional
option given to the juvenile court. But compare § 26-18-6(g), Ala. Code 1975, which provides:
 "Service of process by publication may be used by a juvenile court having jurisdiction over an abandoned child when all of the following conditions are met:
 "(1) The court has reached a point in the proceedings concerning an abandoned child where the only remaining proceeding is the final disposition of the case.
 "(2) The final disposition sought is the termination of parental rights for the purpose of placing the child for adoption.
 "(3) The child who is the subject of the proceedings was abandoned in the state.
 "(4) The state agency or private agency having custody of the child has established, by evidence presented to the court of competent jurisdiction, that the absent parent or parents are avoiding service of process or their whereabouts are unknown and cannot be ascertained with reasonable diligence."
(Emphasis added.) Section 12-15-71(a)(5) and § 26-18-6(g) appear to be inconsistent. In the former, the Legislature has implied that a termination proceeding is not a disposition, whereas in the latter, the Legislature has indicated that a termination proceeding is a disposition. That inconsistency, however, can be reconciled by the familiar rule of statutory construction that a specific provision relating to a specific subject controls over a general provision relating to another, or a more general, subject. See Stough v. B B Pallet Repair, Inc.,778 So.2d 193, 198 (Ala.Civ.App. 2000) (holding that a specific reference to "minors employed contrary to the law" in § 25-5-34 controls over the general reference to "employees" in § 25-5-1(5));Powers v. State, 591 So.2d 587, 588 (Ala.Crim.App. 1991) (holding that because §§ 13A-10-34 and -35 "specifically
address a situation in which the accused aids in an escape," it controls over § 13A-10-32, which relates to the general offense of escape).
To the extent that there is a conflict between § 12-15-71(a)(5) and § 26-18-6(g), the former controls. Section 12-15-71(a) is the more specific statute, relating to the "[d]isposition of dependent children" whereas § 26-18-6(g) relates to service of process in cases involving abandoned children. It may be assumed that the Legislature added the phrase "with termination of parental rights" to the fifth dispositional option, see § 12-15-71(a)(5), only as a reminder to the juvenile court that a disposition awarding permanent custody to DHR must be preceded by an adjudication terminating parental rights.
A literal and logical reading of § 12-15-65(f) and (h), as well as § 12-15-71(a), compels us to hold that a parental-rights-termination hearing is an adjudicatory proceeding at which hearsay evidence, which is permitted by § 12-15-65(h) in a dispositional proceeding, is inadmissible. Virtually all other jurisdictions agree.
 "In most states, the rule against hearsay does not apply during child protection proceedings except during an adjudication hearing and during a termination of parental rights trial. There are persuasive policy arguments for relaxed rules of evidence in certain stages of child protection proceedings. For example, at an emergency removal hearing, there may not be time to subpoena a witness and whatever information is available may be needed for the protection of the child. At disposition or review, where the court is evaluating the case plan and case progress, it *Page 111 
is often unnecessary and expensive to bring in each person who has provided important information to the caseworker."
Mark Hardin, Child Protection Cases in a Unified Family Court, 32 Fam. L.Q. 147, 179 (1998) (emphasis added). See, e.g., In reA.C., 751 So.2d 667 (Fla.Dist.Ct.App. 2000) (holding that the contents of the case file of the Department of Children and Families was inadmissible in an adjudicatory hearing on termination of the mother's parental rights and could not be considered by the trial court in reaching its decision); In reA.A., 252 Ga.App. 167, 555 S.E.2d 827 (2001) (holding that a summary, prepared by a new caseworker, of the previous caseworker's file was inadmissible hearsay and could not constitute clear and convincing evidence of present unfitness in a termination hearing); In re Adoption/Guardianship No.95195062, 116 Md.App. 443, 465, 696 A.2d 1102, 1111-12 (1997) (holding that a statute authorizing court reports and psychological evaluations at dispositional proceedings did not allow for the admission, at a termination proceeding, of a psychiatric report containing the doctor's diagnosis and opinion regarding the mother's ability to care for her children); In reDuncan/Walker Children, 109 Ohio App.3d 841, 846,673 N.E.2d 217, 219 (1996) (holding that reliance on hearsay in an adjudicatory hearing is erroneous).
DHR argues that "once dependency is adjudicated all subsequent hearings are dispositional." We acknowledge that some of this court's parental-rights-termination decisions have implied that a termination proceeding is a dispositional hearing. See, e.g.,G.L.C. v. State Dep't of Human Res., 777 So.2d 706, 708
(Ala.Civ.App. 1999); J.L. v. State Dep't of Human Res.,688 So.2d 868 (Ala.Civ.App. 1997); J.V. v. State Dep't of HumanRes., 656 So.2d 1234 (Ala.Civ.App. 1995); Gentry v. State Dep'tof Pensions Sec., 462 So.2d 929 (Ala.Civ.App. 1984); Kelleyv. State Dep't of Pensions Sec., 366 So.2d 736 (Ala.Civ.App. 1979).
The rationale of those decisions appears to be that, because a termination proceeding inevitably involves a child who has previously been declared dependent, the purpose of a termination proceeding is merely to make a disposition of the dependent child. That rationale, however, was explicitly rejected 20 years ago by the United States Supreme Court in Santosky v. Kramer,455 U.S. 745, 767 n. 17, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (stating that the "dispositional phase" occurs "after the parents have been found unfit").
In Santosky, the Court held that before the State may sever a parent's fundamental right to the care, custody, and management of his or her own child, due process requires that the State support its allegations of parental unfitness by clear and convincing evidence. The Court stated:
 "When the State initiates a parental rights termination proceeding, it seeks not merely to infringe [the parent's] fundamental liberty interest, but to end it. `If the State prevails, it will have worked a unique kind of deprivation. . . . A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one.' [Lassiter v. Department of Social Services,] 452 U.S. [18,] 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 [(1981)].
 ". . . [A] . . . decision terminating parental rights is final and irrevocable. . . . Few forms of state action are both so severe and so irreversible."
Santosky, 455 U.S. at 759, 102 S.Ct. 1388. The Court recognized the interest of the child and his foster parents (or prospective adoptive parents) in permanency, but it concluded that the threatened loss of a natural parent's fundamental right is sufficiently *Page 112 
grave that, at the adjudicatory stage of a termination proceeding, "the focus emphatically is not on [the children and the foster parents or prospective adoptive parents]."455 U.S. at 759, 102 S.Ct. 1388. Instead, the Court stated,
 "the factfinding hearing pits the State directly against the parents. The State alleges that the natural parents are at fault. The questions disputed and decided are what the State did — `made diligent efforts,' — and what the natural parents did not do — `maintain contact with or plan for the future of the child.' . . .
 "At the factfinding, the State cannot presume that a child and his parents are adversaries. After the State has established parental unfitness at that initial proceeding, the court may assume at the dispositional stage that the interests of the child and the natural parents do diverge. . . . But until the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship. Thus, at the factfinding, the interests of the child and his natural parents coincide to favor use of error-reducing procedures."
Santosky, 455 U.S. at 759-61, 102 S.Ct. 1388 (footnote and citations omitted).
After reviewing the applicable statutes, the Alabama Rules of Juvenile Procedure, and the heightened evidentiary standard that is constitutionally required in parental-rights-termination cases, we conclude that the rationale for admitting hearsay in some of our parental-rights-termination cases is erroneous. We hold that when a juvenile court hears evidence on a petition to terminate parental rights, it is conducting an adjudication, not making a disposition, and hearsay is "not competent in a hearing on the [termination-of-parental-rights] petition." § 12-15-65(h).Cf. Worley v. Jinks, 361 So.2d at 1089 (holding that a court report prepared pursuant to § 12-15-69(a), Ala. Code 1975, should not have been admitted in evidence at a hearing to adjudicate dependency).
We also hold that, to the extent that decisions of this court state or imply that a written report containing hearsay may be received at the adjudicatory phase of a parental-rights-termination proceeding so long as the author of the report is present and available for cross-examination, they are erroneous. See, e.g., M.W. v. Houston County Dep't of HumanRes., 773 So.2d 484, 486 (Ala.Civ.App. 2000). Section 12-15-65(h) allows written reports containing hearsay to be received only at a dispositional hearing. The last sentence of subsection (h) provides:
 "The parties or their counsel shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making reports."
The above sentence does not carve out an exception, during anadjudicatory hearing, for the admission of a report containing hearsay if the maker of the report is available for cross-examination. Instead, it guarantees the opportunity to cross-examine the maker of a report "so received," that is,received at a dispositional hearing. In other words, written reports containing hearsay are admissible at a disposition — and only at a disposition — if the maker of the report is subject to cross-examination.
DHR contends that, because various documentary materials had been submitted to the juvenile court before the termination-of-parental-rights proceeding, the court was entitled, in the interest of judicial economy, to take judicial notice of the previously submitted materials. The juvenile court's taking "judicial knowledge of the . . . complete contents of each court file," however, could not remove the documentary materials in the court files from *Page 113 
the purview of the hearsay rule. See In re A.B.,308 Ill.App.3d 227, 719 N.E.2d 348, 241 Ill.Dec. 487 (1999) (holding that the trial court erroneously took judicial notice, in a parental-rights-termination proceeding, of the entire neglect file that led to the removal of the children from the mother).
 "A court may take judicial notice of matters generally known to the court and not subject to reasonable dispute. This includes matters of record in its own proceedings. However, taking judicial notice of matters of record in a court's own proceedings cannot result in admitting hearsay evidence where it would otherwise be prohibited."
In re A.B., 308 Ill.App.3d at 237, 719 N.E.2d at 356-57, 241 Ill.Dec. at 495-96 (citations omitted).
 "[D]uring a typical proceeding to terminate parental rights, a trial court will likely receive various service plans and reports that may contain information that is hearsay or otherwise inadmissible. Wholesale judicial notice of all matters occurring prior to the unfitness hearing is unnecessary and inappropriate, and a trial court should only take judicial notice of those portions of the underlying court files that have been proffered by the State and to which the respondent is given an opportunity to object."
In re J.P., 316 Ill.App.3d 652, 662-63, 737 N.E.2d 364, 372, 249 Ill.Dec. 974, 982 (2000) (citations omitted).
As is the case in many termination-of-parental-rights cases appealed to this court, the proceeding before us did not
include a "disposition hearing." It included only an adjudicatory hearing on whether to terminate the mother's parental rights. The termination proceeding ended on March 1, 2002, when the court stated that it would take the issue of termination under advisement and "issue an order in due course." In its March 26, 2002, order, the court stated:
 "Pursuant to Title 26-18-9, Code of Alabama 1975, the Clerk and Register shall set this cause for Permanent Placement and Review on 12/11/02 at 8:30 A.M."
The "Permanent Placement and Review" proceeding set for December 11, 2002, is the "disposition hearing" contemplated by § 12-15-65(h). At that hearing, hearsay will be admissible. However, hearsay was not admissible at the termination proceeding that is the subject of this appeal.[3] The mother's attorney repeatedly objected to the admission of hearsay testimony and documentary evidence containing hearsay. In response, the juvenile court stated that it would consider "anything and everything" in the documentary materials because, it said, those materials were properly before the court.
This court has concluded, in several cases in which written reports containing hearsay were erroneously admitted at a parental-rights-termination proceeding, that the error was harmless because the wrongly admitted evidence was corroborated by in-court testimony or was otherwise cumulative. See, e.g.,J.L. v. State Dep't of Human Res., 688 So.2d at 871; J.V. v.State Dep't of Human Res., 656 So.2d at 1237; Menniefield v.State Dep't of Human Res., 549 So.2d 496, 500 (Ala.Civ.App. 1989); Hutchens v. State Dep't of Pensions Sec.,497 So.2d 156, 158 (Ala.Civ.App. 1986). We cannot reach the same conclusion in the present case. The juvenile *Page 114 
court made it unequivocally clear that it would consider "every document and every word in all three files in order to make [the termination-of-parental-rights] decision." The hearsay considered by the court was not cumulative of the legally admitted evidence. For example, DHR presented no evidence at trial concerning the mother's employment, yet the documentary materials indicate, among other things, that a DHR social worker had learned from the manager of a McDonald's fast-food restaurant that the mother was terminated from her employment at the restaurant after $300 "went missing from the cash register." Similarly, DHR presented no evidence regarding the mother's mental state, yet the documentary materials include several psychological evaluations containing the opinion of mental health professionals that the mother is unable to adequately parent her children.
DHR predicts that the following consequences will result from the decision we reach today:
 "If this Court were to find that the hearing on the Department's petition to terminate parental rights was adjudicatory and that hearsay was not admissible, the practical effect would be that the case would be reheard from the initial contact with the parent through the date of the hearing on the termination petition, resulting in the presentation of evidence previously submitted to the court at prior hearings. Testimony would have to be provided by each social worker, counselor, medical doctor or other professional that had ever dealt with the case, if they could be located."
(Emphasis added.) Indeed. DHR's description accords with what is required by Rule 25(A), Ala. R. Juv. P., in order to satisfy the "legal and due process requirements . . . [for] the trial of a civil action before the court sitting without a jury," and by §§ 12-15-65(f) and 26-18-7(a) to ensure the admission of evidence that is "competent, material, and relevant."
Hearsay was erroneously admitted at this termination-of-parental-rights proceeding; the error was not harmless. The judgment of the juvenile court is reversed and the cause is remanded for proceedings consistent with the principles expressed in this opinion.
OPINION OF NOVEMBER 22, 2002, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND REMANDED.
PITTMAN, J., concurs.
YATES, P.J., and THOMPSON and MURDOCK, JJ., concur in the result.
[1] In her defense, the mother testified that she had failed to visit the children during one of those periods because she had gone to Georgia to be with her family during her father's last illness and at his death. The mother testified that, during the other period when she had failed to visit the children, she had been pregnant and had gone to another city to have her baby because, she said, she had previously had a baby in a Birmingham hospital who died within 24 hours of its birth. She said that with her next pregnancy she wanted to be in a different hospital.
[2] The statutory authority for the preparation and submission of court reports to the juvenile court is found in § 12-15-69(a), Ala. Code 1975, which provides:
 "After a petition alleging . . . dependency has been filed, the court may direct that a predisposition study and report to the court be made by . . . [DHR] when the petition alleges that the child is dependent concerning the child, his family, his environment and other matters relevant to the need for treatment or disposition of the case."
(Emphasis added.)
[3] We recognize that not all out-of-court statements are hearsay. Some statements may fall within the provisions of Rule 801(c) and (d), Ala. R. Evid., allowing the admission of statements that are definitionally not hearsay. Others may qualify as exceptions to the hearsay rule, see Rules 803 and 804, Ala. R. Evid.