J.C. Robinson ("Robinson"), as administrator of the estate of Katie Ruth Robinson, brought a wrongful-death action against Kathy Sawyer, the commissioner of the Department of Mental Health and Mental Retardation ("DMHMR"), and others.[1] Although J.C. Robinson is not a resident of Montgomery County and none of the actions complained of in this case occurred in Montgomery County, Robinson filed the action in Montgomery County because Sawyer is a State officer who resides in Montgomery County.[2] The defendants moved on the basis of § 6-5-546, Ala. Code 1975,[3] a part of the Alabama Medical Liability Act of 1987, § 6-5-540 et seq., Ala. Code 1975 ("AMLA"), or, in the alternative, on the basis of § 6-3-21.1, Ala. Code 1975, theforum non conveniens statute,[4] to transfer this action from Montgomery County to Morgan County, the county in which most of the incidents that allegedly led to Katie Robinson's death occurred and the county where all the defendants except Sawyer reside. The trial court denied the motion. The defendants petition this Court for a writ of mandamus directing the trial court to transfer the action to Morgan County. We grant the petition and issue the writ.
 I.
The Lurleen B. Wallace Developmental Center ("the Wallace Center"), which is operated by DMHMR and located in Morgan County, provides long-term habilitation services and treatment for persons who suffer from mental retardation; it employs physicians and nurses to provide health-care services to those persons. At the time of her death, Katie Robinson was a resident at the Wallace Center. She suffered from eating disorders and required supervision while she ate and digested her food. Those eating disorders *Page 901 
included her willingness to eat anything, even if it was not edible or digestible (pica disorder), and her tendency to regurgitate her food, which often caused her to choke and necessitated assistance to clear her throat.
On August 20, 1999, Katie Robinson died after choking on her food. On August 1, 2001, J.C. Robinson, as administrator of Katie Robinson's estate, sued various parties associated with the Wallace Center, claiming that the defendants "failed to provide [Katie Robinson] with appropriate medical treatment"; that the defendants "were under a duty to provide comprehensive healthcare services by qualified personnel to protect [Katie Robinson's] health and well being"; and that the defendants "negligently or wantonly failed to provide healthcare services by qualified personnel to protect [Katie Robinson's] health and well being."
 II.
"The burden of proving a duty to transfer [an action] is on the party raising the issue." Ex parte Alabama Power Co.,640 So.2d 921, 922 (Ala. 1994), citing Ex parte Ralston, 519 So.2d 488
(Ala. 1987), and Ex parte Finance America Corp., 507 So.2d 458
(Ala. 1987).
 "A petition for the writ of mandamus is the proper procedure for challenging a trial court's refusal to transfer an action based on improper venue. Ex parte Alabama Power Co., 640 So.2d 921, 922 (Ala. 1994). A writ of mandamus is appropriate when the petitioner makes a clear showing of error on the part of the trial court. Id."
Ex parte Children's Hosp. of Alabama, 721 So.2d 184, 186 (Ala. 1998). The standard for determining whether a writ of mandamus will issue is as follows:
 "A writ of mandamus is an extraordinary remedy, and it will be `issued only when there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala. 1993). A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal. Ex parte Drill Parts Serv. Co., 590 So.2d 252 (Ala. 1991)."
Ex parte Empire Fire Marine Ins. Co., 720 So.2d 893, 894
(Ala. 1998). "This Court reviews mandamus petitions seeking review of a venue determination by asking whether the trial court exceeded its discretion in granting or denying the motion for a change of venue." Ex parte Perfection Siding, Inc.,882 So.2d 307, 310 (Ala. 2003) (citing Ex parte Scott Bridge Co.,834 So.2d 79, 81 (Ala. 2002)).
 III.
The defendants argue that the AMLA, and in particular §6-5-546, requires that this case be brought in Morgan County, "the county wherein the act or omission constituting the alleged breach of the standard of care by the defendant actually occurred." However, the AMLA applies to the Wallace Center only if the Wallace Center is a "health care provider" as that term is defined in § 6-5-542(1) of the AMLA, and the alleged acts of negligence are acts of medical malpractice that are subject to the AMLA.[5] *Page 902 
Robinson contends that the AMLA does not apply in the present case because, he argues, the Wallace Center is not a "health care provider" as that term is defined in § 6-5-542. In Ex parteAlabama Department of Mental Health Mental Retardation,723 So.2d 11 (Ala. 1998), this Court addressed that very question; it held that the AMLA does not apply to the Wallace Center:
 "Using traditional principles of statutory construction, we conclude that § 6-5-551, Ala. Code 1975, does not apply in this case, because there is no legislative history or other evidence to indicate that the Legislature intended the provisions of the Medical Liability Act of 1987 to apply to the Department or to the [Wallace] Center. Facilities such as the [Wallace] Center are established and governed by § 22-50-1 et seq., Ala. Code 1975. Had the Legislature intended to include facilities such as the [Wallace] Center within its definition of a `health care provider' (see § 6-5-542(1)) it easily could have done so; and, if our holding today is not what the Legislature intended, it can amend the Act."[6]
The defendants argue that it is unclear whether in Ex parteAlabama Department of Mental Health evidence was presented to the trial court or included in the materials before this Court that would have established that the Wallace Center fit the definition of hospital in § 22-21-20. Therefore, in spite of this Court's explicit holding to the contrary in Ex parte AlabamaDepartment of Mental Health, the defendants argue that the evidence in this case "amply demonstrates that the Wallace Center is a hospital as defined by Alabama law." We decline the defendants' invitation to overrule Ex parte Alabama Departmentof Mental Health. As we noted in that case, if the Legislature had intended to include the Wallace Center within its definition of a "health care provider," it easily could have done so. Therefore, the *Page 903 
defendants have no clear legal right under the AMLA to have this action transferred to Morgan County.[7]
 IV.
The defendants also argue that they have a clear legal right to have the action transferred to Morgan County pursuant to §6-3-21.1, the forum non conveniens statute. To succeed on this claim the defendants must establish (1) that there is another county where venue is appropriate and (2) that transferring the case to that county is "in the interest of justice" or necessary "for the convenience of parties and witnesses." § 6-3-21.1. The defendants argue that, pursuant to the general venue statute, §6-3-2, which provides that an action may be maintained "in the county in which the act or omission [giving rise to the action] . . . occurred," Morgan County is an appropriate venue in this case. Because it is not disputed that the acts or omissions giving rise to this action occurred in Morgan County, it would appear that Morgan County is "an appropriate venue."
Robinson argues, however, that the defendants cannot escape venue in Montgomery County because defendant Sawyer is a State official who resides in Montgomery County; therefore, Robinson argues, venue must remain in Montgomery County. In support of this proposition, Robinson cites this Court's holding in Exparte Neely, 653 So.2d 945, 947 (Ala. 1995), that "absent statutory authority to the contrary, venue for [actions] against a state agency or a state officer should be in the county of the official residence of the agency or officer."
Neely was an inverse-condemnation action involving property in Madison County. The action was filed in Madison County; however, on a change-of-venue motion filed by the defendant State official, the Madison Circuit Court transferred the case to the Montgomery Circuit Court. The plaintiff, Neely, petitioned this Court for a writ of mandamus, arguing that venue was proper only in Madison County because the general venue statute, § 6-3-2, provides that in actions "where real estate is the subject matter of the action" venue is proper in the county where the real estate is located, which in Neely's case was Madison County. Notwithstanding § 6-3-2, this Court denied Neely's petition, stating:
 "[W]here an officer of the state is a defendant, as in this case, or where an agency of the state is a defendant, venue is proper only in Montgomery County, `absent specific statutory authority to the contrary or waiver of objection to venue' and `even where the case arguably is one involving real estate in another county.'"
653 So.2d at 946 (citations omitted).[8] Because an officer of the State is a defendant in the present case, Robinson argues that, given this Court's reasoning in Neely, "venue is proper only in Montgomery County." Id.
However, the defendants note the proviso in Neely that in an action against a State officer venue is proper only in Montgomery County "`absent . . . waiver *Page 904 
of objection to venue.'" 653 So.2d at 946 (quoting Ex parte Cityof Birmingham, 507 So.2d 471, 474 (Ala. 1987)). The defendants argue that even though this action was filed against, among others, a necessary party defendant who is an officer of the State and whose official residence is in Montgomery County, the defendant, not the plaintiff, is the intended beneficiary of the general rule and the defendant may accordingly waive the application of the rule where the rule would not serve its purpose of "preventing inconvenience, hindrance, and delay to the successful conduct of the functions of state government."653 So.2d at 947. The defendants note that all of the defendants, including Sawyer, the State officer who resides in Montgomery, "have moved to transfer this case to Morgan County, effectively waiving any objection to venue in Morgan County," where the alleged negligent acts occurred.
The defendants argue that, under the general venue statute, §6-3-2, which provides that an action may be maintained "in the county in which the act or omission [giving rise to the action] . . . occurred," Morgan County is an appropriate venue in this case. It is not disputed that the acts or omissions giving rise to this action occurred in Morgan County; therefore, it appears that Morgan County is "an appropriate venue," to which the case may be transferred. § 6-3-21.1.
Because the defendants have established that another appropriate venue exists, it is necessary to determine whether transferring the case to that venue is "in the interest of justice" or necessary "for the convenience of parties and witnesses." § 6-3-21.1. This inquiry depends on the facts of the case. Ex parte Jim Burke Auto., Inc., 776 So.2d 118, 121 (Ala. 2000). All of the facts in the present case indicate that venue in Morgan County would be significantly more convenient than venue in Montgomery County. First, it is not disputed that the acts or omissions giving rise to this action occurred in Morgan County. This Court has previously held that litigation should be handled in the forum where the injury occurred. Ex parteMitchell, 690 So.2d 356, 359 (Ala. 1997).
Second, one of the fundamental purposes of the doctrine offorum non conveniens is to spare witnesses the unnecessary inconvenience associated with testifying in a distant forum. Exparte Townsend, 589 So.2d 711, 714 (Ala. 1991). In the present case, nearly all of the witnesses who may be called to testify, including nurses, social workers, and other health-care workers who worked at the Wallace Center and who cared for Katie Robinson, reside in or around Morgan County. All of the named defendants, except Kathy Sawyer, live and work in the Morgan County area. Even the plaintiff resides in Lawrence County, which adjoins Morgan County.
Robinson claims that he plans to call "many" upper-level State employees who reside in Montgomery to testify at trial; however, he has not identified any of those individuals. More importantly, he fails to recognize that the State, whose employees may be called, has specifically stated that venue in Morgan County would be more convenient than venue in Montgomery County. Thus, Robinson's argument that venue for State employees would be more convenient in Montgomery County, in spite of the State's clear representations to the contrary, is unpersuasive.
 V.
The defendants have established the existence of an appropriate venue in Morgan County and have established that a transfer to that venue is necessary "for the convenience of parties and witnesses, or in *Page 905 
the interest of justice." § 6-3-21.1. Therefore, the trial court exceeded its discretion in denying the defendants' motion pursuant to § 6-3-21.1 to transfer the case to Morgan County.[9] The defendants' petition for the writ of mandamus is granted and the trial court is directed to vacate its order denying the defendants' motion to change venue and to transfer the action to Morgan County.
PETITION GRANTED; WRIT ISSUED.
HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] The others against whom Robinson brought this action are James Finch, the director of the Lurleen B. Wallace Developmental Center ("the Wallace Center"); Mark Johnson, a unit director at the Wallace Center; Regina Nolden, a supervisor at the Wallace Center; Connie Lane and Cornelia Stewart, mental-health workers at the Wallace Center; Erica Preston, a licensed practical nurse at the Wallace Center; Pat Ayers, a registered nurse at the Wallace Center; and certain fictitiously named defendants.
[2] Section 6-3-2, Ala. Code 1975, provides that "if the defendant or one of the defendants has within the state a permanent residence, [a legal proceeding] may be commenced in the county of such residence. . . ." This Court stated in Tri-StateCorp. v. State ex rel. Gallion, 272 Ala. 41, 46, 128 So.2d 505,509 (1961): "[I]t is well established in Alabama, as well as elsewhere, that suits involving public officials are properly maintained in the county of their official residence."
[3] Section 6-5-546, Ala. Code 1975, provides, in pertinent part:
 "In any action for injury or damages or wrongful death whether in contract or in tort against a health care provider based on a breach of the standard of care, the action must be brought in the county wherein the act or omission constituting the alleged breach of the standard of care by the defendant actually occurred."
[4] Section 6-3-21.1(a), Ala. Code 1975, provides:
 "(a) With respect to civil actions filed in an appropriate venue, any court of general jurisdiction shall, for the convenience of parties and witnesses, or in the interest of justice, transfer any civil action or any claim in any civil action to any court of general jurisdiction in which the action might have been properly filed and the case shall proceed as though originally filed therein. Provided, however, this section shall not apply to cases subject to Section 30-3-5."
[5] Section 6-5-542(1) defines a "health care provider" as "[a] medical practitioner, dental practitioner, medical institution, physician, dentist, hospital, or other health care provider as those terms are defined in Section 6-5-481." See, e.g.,Cackowski v. Wal-Mart Stores, Inc., 767 So.2d 319, 324-25 (Ala. 2000) (a pharmacist, though not explicitly included in AMLA's list of health-care providers, was included within the AMLA definition of "other health care provider"); Ex parte Main,658 So.2d 384, 387 (Ala. 1995) (a registered nurse assigned by an insurance underwriter to supervise the patient's rehabilitation, though not explicitly included in the list of health-care providers in the AMLA, was an "other health care provider");Tuscaloosa Orthopedic Appliance Co. v. Wyatt, 460 So.2d 156,161 (Ala. 1984) (orthotists are "health care providers" who provide services as prescribed by physicians for their patients);Crowne Invs., Inc. v. Reid, 740 So.2d 400, 405 (Ala. 1999) (the AMLA applies to a professional corporation that was under contract to manage a nursing home); Rosemont, Inc. v. Marshall,481 So.2d 1126, 1129 (Ala. 1986) (a nursing home, though not explicitly included in the list of hospitals in the AMLA, was a skilled intermediate-care nursing facility and was a hospital, for purposes of the AMLA).
[6] In 2001, the Legislature amended the definition of "hospitals" in § 22-21-20, Ala. Code 1975, substituting the language "assisted living facilities, and specialty care assisted living facilities rising to the level of intermediate care" for the language "homes for the aged, domiciliary care facilities and related health care institutions when such institution is primarily engaged in offering room, board, laundry and personal assistance with activities of daily living and incidentals thereto."
Because § 22-21-20 is incorporated by reference into the AMLA by § 6-5-481(7), and because § 6-5-542(1) incorporates into the definition of a "health care provider" a hospital as that term is defined in § 6-5-481, the amendment to § 22-21-20 could have an effect on whether an entity is a health-care provider subject to the AMLA. See Crowne Invs., Inc. v. Reid, 740 So.2d 400, 403
(Ala. 1999) ("Section 6-5-481(7) refers to the definition at §22-21-21; that section, however, contains no definition. The reference to § 22-21-21 apparently was intended to be a reference to § 22-21-20."). However, because the amendment to § 22-21-20
was not effective until March 1, 2002, after the events giving rise to this cause of action and after this wrongful-death action had been filed, we need not consider in this case the implications of that change.
[7] Because we have concluded that the Wallace Center is not a health-care provider subject to the AMLA, we need not consider whether the alleged acts of negligence on which this action is based are acts of medical malpractice subject to the AMLA.
[8] Neely relied on Ex parte City of Birmingham,507 So.2d 471, 474 (Ala. 1987), which stated:
 "Agencies and officers of the state must be sued in the county of their official residence absent specific statutory authority to the contrary or waiver of objection to venue. Hardin v. Fullilove Excavating Co., 353 So.2d 779 (Ala. 1977); Boswell v. Citronelle-Mobile Gathering, Inc., 292 Ala. 344, 294 So.2d 428 (1974); Tri-State Corp. v. State, 272 Ala. 41, 128 So.2d 505 (1961)."
[9] Alabama's forum non conveniens statute is compulsory.See Ex parte Prudential Ins. Co. of America, 721 So.2d 1135,1138 (Ala. 1998) ("The word `shall' is clear and unambiguous and is imperative and mandatory.").